# Exhibit A

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

ALLEGHENY _____ County

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

*[handwritten notes: Time: ML  4/22/24 LOG # 243 +1.00 is a certified process server in the Circuit and County Courts in and for the Second Judicial Circuit]*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: TIMOTHY FITCHETT | Lead Defendant's Name: PETMED EXPRESS, INC. |
|---|---|

Are money damages requested?  ☒ Yes  ☐ No

Dollar Amount Requested: (check one)  ☒ within arbitration limits  ☐ outside arbitration limits

Is this a *Class Action Suit*?  ☒ Yes  ☐ No

Is this an *MDJ Appeal*?  ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: Kevin Tucker, East End Trial Group, 6901 Lynn Way, STE 215, Pittsburgh, PA 15208
(412) 877-5220, ktucker@eastendtrialgroup.com

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Unfair Trade Practices

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*



# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

TIMOTHY FITCHETT, individually and on behalf of all others similarly situated,

    *Plaintiff,*

          v.

PETMED EXPRESS, INC.,

    *Defendant.*

CIVIL DIVISION

No.: _____

CLASS ACTION

**CLASS ACTION COMPLAINT**

Filed on behalf of Plaintiff, Timothy Fitchett

**Counsel of record for Plaintiff:**

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY FITCHETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No.: _____ |
| *Plaintiff*, | |
| | CLASS ACTION |
| v. | |
| PETMED EXPRESS, INC., | |
| *Defendant*. | |

### NOTICE TO DEFEND

**YOU HAVE BEEN SUED IN COURT**. If you wish to defend against the claims set forth in the following pages, you must take action within **TWENTY (20)** days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

TIMOTHY FITCHETT, individually and on behalf of all others similarly situated,

       *Plaintiff,*

             v.

PETMED EXPRESS, INC.,

       *Defendant.*

CIVIL DIVISION

No.: _____

CLASS ACTION

## CLASS ACTION COMPLAINT

Plaintiff Timothy Fitchett, individually and on behalf of all others similarly situated, brings this action against Defendant PetMed Express, Inc., and alleges upon personal knowledge as to himself and upon information and belief as to all other matters, as follows:

## NATURE THE ACTION

1.     Plaintiff's claim is simple: when something is always on sale, it's never on sale.

2.     Many consumers thrive on finding the best deal.

3.     Retailers know this and try to lure consumers with sales that promise huge savings.

4.     But promised savings are false if a product's true price is misrepresented as a discount from an inflated "regular" price ("False Reference Price") that no one ever pays.

5.     The Federal Trade Commission prohibits retailers' use of False Reference Prices:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a) (emphasis added).

6.    For years, Defendant has used False Reference Prices to deny Pennsylvania consumers the discounts they bargained for upon purchasing Defendant's products.

7.    Plaintiff brings this action under Pennsylvania law to recover damages on his own behalf, and to resolve "particular issues" under Pa. R. Civ. P. 1702, 1708, 1709, and 1710 for the Issue Class defined below. To be clear, Plaintiff does not seek damages on behalf of the Issue Class.

## JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction under 42 Pa. C.S. § 931.

9.    The Court has personal jurisdiction over Defendant under 42 Pa. C.S. § 5301.

10.    Venue is proper under Pa. R. Civ. P. 2179 because Defendant regularly conducts business in this County, this is the County where the cause of action arose, and/or this is the County where the transactions or occurrences took place out of which the cause of action arose.

## PARTIES

11.    Plaintiff is a natural person over the age of eighteen. He resides in Allegheny County, Pennsylvania.

12.    PetMed Express, Inc. is a Florida corporation headquartered in Florida.

13.    Defendant owns, operates, and controls https://www.1800petmeds.com/ ("Online Store"), a website where consumers may purchase products for their dogs, cats, and horses.

## COMMON FACTUAL ALLEGATIONS

**A.    Retailers Benefit From False Reference Pricing Schemes.**

14.    Consumer demand is influenced by "internal" and "external" reference prices.[1]

15.    Internal reference prices are "prices stored in memory" (*e.g.*, a consumer's price expectations adapted from past experiences); external reference prices are "provided by observed stimuli in the purchase environment" (*e.g.*, a "suggested retail price").[2]

16.    Consumers' internal reference prices adjust toward external reference prices when valuing a product.[3]

17.    "[T]here is ample evidence that consumers use reference prices in making brand choices" and publications have summarized the empirical data as follows:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][4]

18.    Retailers, including Defendant, know consumers are susceptible to a bargain.

---

[1] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 68.

[2] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70.

[3] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." *The Journal of Marketing* 62 (1998): 46-59, p. 48.

[4] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

19.    Defendant, therefore, has a financial interest in making consumers believe they are receiving a good bargain, even if they are not.

**B.    Pennsylvania And Federal Law Prohibit False "Original Price" References.**

20.    A retailer who uses an artificially inflated "regular" price, or a False Reference Price, reference commits an unfair or deceptive act or practice in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). *See Morrow v. Carter's, Inc.*, No. 16-cv-01485, 2017 U.S. Dist. LEXIS 139876, at *9-11, *15-19 (N.D. Ga. Mar. 6, 2017) (finding plaintiff stated a claim under UTPCPL for alleged false discount scheme); *Morrow v. Ann Inc.*, No. 16-cv-03340, 2017 U.S. Dist. LEXIS 9770, at *9-11, *14-17 (S.D.N.Y. Jan. 24, 2017) (similar); *Robey v. SPARC Grp. LLC*, 290 A.3d 199, 203 (N.J. Super. Ct. App. Div. 2023) ("We are satisfied that plaintiffs' allegations that the discounts offered were illusory, as in our simpler example, were adequately pleaded. Plaintiffs claimed, through the details provided about their purchases briefly summarized above, that each item purchased was 'never offered . . . at [its] purported regular price . . . either before or after [plaintiff's] purchase' and, thus, defendant utilized a fictitious price, as well as the come-on of a discount, as the means of hoodwinking its customers.").[5]

21.    Under the Federal Trade Commission Act ("FTCA"), when a retailer offers a discount from its own original price, the original price must have been a price at which the retailer held the item out for sale on a regular basis, for a commercially reasonable time. *See* 16 C.F.R. § 233.1(a) and (b).

---

[5] *See Garcia v. Am. Eagle Outfitters, Inc.*, 293 A.3d 252, 258 (Pa. Super. 2023) ("Because these courts considered substantially identical statutory language under a uniform consumer protection law, their decisions deserve great deference from this Court."); 1 Pa. C.S. § 1927.

**C.     Defendant's Fraudulent Price Discounting Scheme Violates Pennsylvania Law.**

22.     Defendant offers discounts on *all* of its products, *all* of the time.

23.     Defendant offers these discounts by displaying a "regular" price in strikethrough font to indicate that the "regular" price is outdated and has been replaced by a "sale" price, which frequently appears in conspicuous font of a different size or color than the surrounding text, and never in strikethrough font.

24.     Sometimes, Defendant describes the price disparity between a "regular" and a "sale" price in terms of a percentage discount.

25.     Sometimes, Defendant indicates the discount is available "today," suggesting the discount is time-sensitive. *See* Fig. 1 and Fig. 1.1.[6]



Fig. 1.1



Fig. 1

---

[6] The screenshots in Figs. 1 and 1.1 were taken from Defendant's Online Store on April 4, 2024. *See* https://www.1800petmeds.com/nexgard+chewables-prod10356.html.

26.     Upon information and belief, at that time of every purchase made from Defendant, Defendant has never previously sold the purchased product at its advertised "regular" price.

27.     Defendant's perpetual discounting constitutes false, fraudulent, and deceptive advertising because the "regular" prices listed in strikethrough font are always greater than the prices Defendant sells its products.

28.     In other words, the "regular" prices are a total fiction used exclusively as benchmarks from which the advertised discounts and corresponding "sale" prices are derived.

29.     Defendant's scheme is designed to trick consumers into believing their purchase includes a discount, when, in reality, all consumers get is the false impression of a bargain.

30.     Defendant engages in this practice knowing it never offered or sold the products at the advertised "regular" prices.

31.     For the avoidance of doubt, nowhere does Defendant disclose that the "regular" prices are not: (a) former prices; (b) recent, regularly offered former prices; (c) prices at which identical products are sold elsewhere in the market; or (d) based on an MSRP.

32.     And, upon information and belief, Defendant's "regular" prices are not, in fact, based on an MSRP.[7]

33.     Nor does Defendant disclose the date at which the "regular" prices were offered in the market by either Defendant or one of Defendant's competitors or suppliers.

---

[7] *See* Exhibit A, Plaintiff's Counsel's MSRP Investigation indicating:
   (a) the MSRP for Heartgard Plus Green (6-pack) for Dogs 26-50lbs was $66.19 on February 16, 2023—Defendant's "reg." price for the same product was $84.99 on February 4, 2023;
   (b) the MSRP for Nexgard (6-pack) for dogs 4-10lbs was $144.99 on December 7, 2022—Defendant's "reg." price for the same product was $190.56 on February 3, 2023); and
   (c) the MSRP for Nexgard Chewables (6-pack) for dogs 24-60lbs was $144.99 on January 23, 2023—Defendant's "reg." price for the same product was $208.56 on February 3, 2023.

**D.    Investigation**

34.    Plaintiff's counsel's investigation revealed that every product in Defendant's Online Store displays a "regular" price and a substantially discounted "sale" price.

35.    Plaintiff's counsel used the Internet Archive's Wayback Machine[8] to investigate the "regular" and "sale" prices of Defendant's products over time. This investigation revealed that, for every product investigated, Defendant has never previously sold the product at the "regular" price displayed in the Online Store.

**Nexgard Chewables (3-pack) – Dog (4-10 lbs)[9]**

|  | Feb. 15, 2016 | Feb. 5, 2017 | Sept. 19, 2018 | May 2, 2019 | Jan. 11, 2020 |
|---|---|---|---|---|---|
| "Regular" Price | $78.74 | $79.99 | $86.13 | $73.84 | $79.99 |
| "Sale" Price | $57.99 | $58.64 | $58.64 | $46.15 | $55.99 |

|  | Jan. 17, 2021 | Jan. 21, 2022 | Feb. 3, 2023 | Aug. 1, 2023 |
|---|---|---|---|---|
| "Regular" Price | $84.27 | $89.99 | $104.56 | $104.56 |
| "Sale" Price | $58.99 | $62.99 | $73.19 | $73.19 |

**Heartgard Chewables for Cats (6-pack) – Cat (5-15 lbs)[10]**

|  | Apr. 30, 2020 | Jan. 19, 2021 | Jan. 24, 2022 | Feb. 15, 2023 | Aug. 1, 2023 |
|---|---|---|---|---|---|
| "Regular" Price | $51.27 | $57.13 | $57.13 | $67.13 | $67.13 |
| "Sale" Price | $35.89 | $39.99 | $39.99 | $46.99 | $46.99 |

---

[8] The Wayback Machine "allows users to browse versions of pages and documents as they existed at various points in history[.]" *Perera v. AG United States*, 536 F. App'x 240, 242 n.3 (3d Cir. 2013).

[9] *See* Exhibit B, Investigation into PetMeds' False Price Disparities, pp. 1-9.

[10] *See* Exhibit B, Investigation into PetMeds' False Price Disparities, pp. 10-14.

### Apoquel (price per tablet) – 3.6mg[11]

|  | Jan. 30, 2016 | May 8, 2017 | Sept. 19, 2018 | May 2, 2019 | Apr. 17, 2020 |
|---|---|---|---|---|---|
| "Regular" Price | $2.60 | $3.49 | $3.58 | $2.87 | $3.27 |
| "Sale" Price | $2.08 | $2.51 | $2.29 | $1.79 | $2.29 |

|  | Jan. 17, 2021 | Jan. 20, 2022 | Feb. 15, 2023 | Aug. 1, 2023 |
|---|---|---|---|---|
| "Regular" Price | $3.47 | $3.61 | $3.86 | $3.86 |
| "Sale" Price | $2.43 | $2.53 | $2.70 | $2.70 |

36.     Plaintiff's investigation demonstrates that the "regular" prices listed in the Online Store are False Reference Prices.

### ALLEGATIONS SPECIFIC TO PLAINTIFF

37.     Plaintiff resides in Allegheny County, Pennsylvania.

38.     On February 8, 2023, Plaintiff visited Defendant's Online Store and purchased:

(a)     a 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds ("Heartgard") for $59.49;

(b)     a 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds ("Nexgard 24-60") for $138.99; and

(c)     a 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds ("Nexgard 4-10") for $133.39. *See* Exhibit C, Order Confirmation.

---

[11] *See* Exhibit B, Plaintiff's Counsel's Investigation into PetMeds' False Price Disparities, pp. 15-23.

### Heartgard Plus Green (6-pack) – Dog (26-50 lbs)

39.     Below is a screenshot from the Internet Archive's Wayback Machine that displays Defendant's Heartgard advertisement as it existed on February 4, 2023. Upon information and belief, the advertisement did not change between February 4, 2023 and the time of Plaintiff's purchase four days later, on February 8, 2023.



Fig. 2.[12]

---

[12] *See* https://web.archive.org/web/20230204145156/https://www.1800petmeds.com/Heartgard+Plus+Chewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 3. 2024).

40.     When Plaintiff visited Defendant's Online Store on February 8, 2023, Defendant represented that (a) Heartgard's "reg." price was $84.99, (b) Heartgard's sale price was $59.49, and (c) Plaintiff could "save 30%," or $25.50, by purchasing Heartgard "today." *See* Fig. 2.

41.     After notifying Plaintiff of Heartgard's "regular" and sale prices, and the $25.50 discount this price disparity represents, Plaintiff purchased Heartgard from Defendant on February 8, 2023. *See* Exhibit C, Order Confirmation.

42.     Defendant has never offered Heartgard for sale at the listed "reg." price of $84.99.

43.     In fact, at the time of Plaintiff's purchase, Defendant had never sold Heartgard for more than $59.49, the False Reference Price displayed at the time of Plaintiff's purchase.

|                 | Sept. 27, 2020 | Oct. 20, 2021 | May 22, 2022 | June 8, 2023 | Dec. 1, 2023 |
|-----------------|----------------|---------------|--------------|--------------|--------------|
| "Regular" Price | $67.13         | $71.41        | $77.13       | $84.99       | $84.99       |
| "Sale" Price    | $46.99         | $49.99        | $53.99       | $59.49       | $59.49[13]   |

---

[13] *See* Exhibit B, Investigation into PetMeds' False Price Disparities pp. 24-29.

### **Nexgard (6-pack) – Dog (4-10 lbs)**

44.     Below is a screenshot from the Internet Archive's Wayback Machine that displays

the Nexgard 4-10 advertisement as it existed on February 3, 2023. Upon information and belief,

the advertisement did not change between February 3, 2023 and the time of Plaintiff's purchase

five days later, on February 8, 2023.



Fig. 3.[14]

45.     When Plaintiff visited Defendant's Online Store on February 8, 2023, Defendant

represented that (a) Nexgard 4-10's "reg." price was $190.56, (b) Nexgard 4-10's sale price was

$133.39, and (c) Plaintiff could "save 30%," or $57.17, by purchasing Nexgard 4-10 "today." *See*

Fig. 3.

---

[14] *See*
https://web.archive.org/web/20230203102105/https://www.1800petmeds.com/nexgard+chewabl
es-prod10356.html (captured Apr. 3. 2024).

46.     After notifying Plaintiff of Nexgard 4-10's "regular" and sales prices, and the $57.17 discount this price disparity represents, Plaintiff purchased Nexgard 4-10 from Defendant on February 8, 2023. *See* Exhibit C, Order Confirmation.

47.     Defendant has never offered Nexgard 4-10 for sale at the "reg." price of $190.56.

48.     In fact, at the time of Plaintiff's purchase, Defendant had never sold Nexgard 4-10 for more than $133.39, the False Reference price displayed at the time of Plaintiff's purchase.

|  | Feb. 15, 2016 | Feb 5, 2017 | July 20, 2018 | May 2, 2019 | Jan. 11, 2020 |
|---|---|---|---|---|---|
| "Regular" Price | $151.23 | $153.73 | $164.89 | $141.70 | $154.27 |
| "Sale" Price | $115.98 | $112.27 | $112.27 | $88.56 | $107.99 |

|  | Jan. 17, 2021 | Jan. 21, 2022 | Feb. 3, 2023 |
|---|---|---|---|
| "Regular" Price | $159.27 | $190.56 | $190.56 |
| "Sale" Price | $111.49 | $133.39 | $133.39[15] |

---

[15] *See* Exhibit B, Investigation into PetMeds' False Price Disparities, pp. 30-38.

### Nexgard (6-pack) – Dog (24-60 lbs)

49.     Below is a screenshot from the Internet Archive's Wayback Machine that displays the Nexgard 24-60 advertisement as it existed on February 3, 2023, five days before Plaintiff's purchase on February 8, 2023.



Fig. 4.[16]

50.     When Plaintiff visited Defendant's Online Store on February 8, 2023, Defendant represented that (a) Nexgard 24-60's "reg." price was one price, (b) Nexgard 24-60's sale price was another lower price, and (c) Plaintiff could "save 30%" by purchasing Nexgard 24-60 "today." *See* Fig. 4.

---

[16] *See* https://web.archive.org/web/20230203102105/https://www.1800petmeds.com/nexgard+chewables-prod10356.html (captured Apr. 3. 2024).

51.    After notifying Plaintiff of Nexgard 24-60's "regular" and sale prices, and the 30% discount this price disparity represents, Plaintiff purchased Nexgard 24-60 from Defendant on February 8, 2023 for $138.99. *See* Exhibit C, Order Confirmation.

52.    Defendant has never offered Nexgard 24-60 for sale at the "reg." price that Defendant displayed at the time of Plaintiff's purchase.

|  | Feb. 15, 2016 | Feb 5, 2017 | Dec. 15, 2019 | June 4, 2020 | Jan. 17, 2021 |
|---|---|---|---|---|---|
| "Regular" Price | $156.23 | $159.98 | $157.13 | $166.41 | $208.56 |
| "Sale" Price | $119.98 | $117.37 | $109.99 | $116.49 | $145.99 |

|  | Jan. 21, 2022 | Feb. 3, 2023 |
|---|---|---|
| "Regular" Price | $208.56 | $208.56 |
| "Sale" Price | $145.99 | $145.99[17] |

53.    The "regular" prices advertised on products sold at the Online Store are False Reference Prices, utilized only to perpetuate Defendant's false discount scheme.

54.    Defendant knows its reference pricing is false, deceptive, misleading, and unlawful.

55.    Defendant concealed from, and intentionally failed to disclose to, Plaintiff the truth of its false discounts and False Reference Prices.

56.    At all relevant times, Defendant had a duty to Plaintiff to disclose the truth about its false discounts.

57.    Plaintiff was damaged and suffered losses equal to the discounts that Defendant offered, and that Plaintiff accepted by making a purchase but never received.

---

[17] *See* Exhibit B, Investigation into PetMeds' False Price Disparities, pp. 39-45.

## **CLASS ACTION ALLEGATIONS**

58.     Plaintiff seeks to certify an Issue Class that includes "all Pennsylvania citizens who are domiciled in Pennsylvania and who purchased products from Defendant's Online Store" solely for purpose of determining whether Defendant's display of an artificially inflated 'regular' price reference constitutes an unfair or deceptive act or practice in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (this issue is referred to herein as the "UTPCPL Issue").

59.     The Issue Class is maintainable pursuant to Pennsylvania Rules of Civil Procedure 1702, 1708, 1709, and 1710.

60.     The Issue Class is so numerous that joinder is impracticable. Upon information and belief, Defendant's records will demonstrate there are more than 40 members of the Issues Class. Pa. R. Civ. P. 1702(a)(1).

61.     There are questions of law and fact common to Plaintiff and the Issue Class because Plaintiff and the Issue Class were subjected to the same false advertisements, and the questions of whether those advertisements were false or deceptive has a single common answer with respect to Plaintiff and the Issue Class. Pa. R. Civ. P. 1702(2).

62.     The claims of Plaintiff and the Issue Class are typical of one another because they are based on the same legal theories and arise from the same conduct. Pa. R. Civ. P. 1702(3).

63.     Plaintiff will fairly and adequately assert and protect the interest of the Issue Class. Pa. R. Civ. P. 1702(4).

64.     The interests of Plaintiff and the Issue Class align, and Plaintiff has retained counsel who are competent and experienced in class action and consumer rights litigation. Pa. R. Civ. P. 1709.

65.     Certifying the Issue Class solely for purposes of determining whether Defendant's uniform representations were false, deceptive, or misleading provides a fair and efficient method of adjudication of the controversy. Pa. R. Civ. P. 1702(5).

66.     The common issue that the Issue Class seeks to litigate—whether Defendant's false price representations constitute an unfair or deceptive act or practice in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law—predominates over any individual issue of law or fact. Pa. R. Civ, P. 1708(b)(1).

67.     There are likely no difficulties in maintaining this case as a class action to decide whether Defendant's false price representations are false or deceptive because Defendant made the same false representations to Plaintiff and each member of the Issue Class, which means the same evidence will be needed by Plaintiff and the Issue Class to determine the single issue before the Court and there will be no individual legal or factual issues for the Court to resolve. Pa. R. Civ. P. 1708(b)(1).

68.     The Court should certify the Issue Class because the prosecution of separate actions on the issue of whether the uniform misrepresentation made to Plaintiff and the members of the Issue Class is false or deceptive would lead to inconsistent or varying adjudications, which would confront Defendant with incompatible standards of conduct. Pa. R. Civ. P. 1708(b)(1).

69.     Based on the knowledge of Plaintiff and undersigned counsel, there are no similar cases currently pending against Defendant. Pa. R. Civ. P. 1708(b)(1).

70.     This forum is appropriate for litigation, as Defendant regularly conducts business in this County and all or part of the claims arose in this County. Pa. R. Civ. P. 1708(b)(1).

71.     Defendant has acted or refused to act on grounds that apply generally to the Issue Class, such that the relief sought on behalf of the Issue Class is appropriate respecting the Issue

Class as a whole. The relief requested on behalf of the Issue Class applies equally to Plaintiff and the Issue Class members. Pa. R. Civ. P. 1708(b)(2).

## CAUSE OF ACTION

### COUNT I
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1, *et seq.***
*On behalf of Plaintiff and the Issues Class*

72.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

73.    This claim is brought in Plaintiff's individual capacity, except for Plaintiff's request for the certification and resolution of the UTPCPL Issue, which Plaintiff seeks on behalf of the Issue Class.

74.    Plaintiff, the Issue Class members, and Defendant are persons, the products that Defendant sells at its Online Store are goods purchased for personal, family, and/or household use, and Defendant's conduct described herein is trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

75.    Defendant's conduct described herein constitutes unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Defendant: (a) represented that goods have discounted characteristics they do not have; (b) advertised goods with intent not to sell them as advertised; (c) made false and misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and (d) engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. §§ 201-2(4)(v), (ix), (xi), (xxi).

76.    Defendant's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

77.    As a result of Defendant's violation of the UTPCPL, Plaintiff suffered losses equal to the discounts that Defendant offered, and that Plaintiff accepted by making a purchase but never received.

78.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiff is entitled to actual damages or $100 for each product purchased in which Defendant used a False Reference Price, whichever is greater, treble damages, reasonable costs and attorneys' fees, and such additional relief the Court deems necessary and proper.

79.    Pursuant to Pa. R. Civ. P. 1702, 1708, 1709, and 1710, the Issue Class is entitled to certification and a determination of the UTPCPL Issue.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all claims so triable.

## PLAINTIFF'S FIRST DISCOVERY REQUESTS

Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission directed to PetMed Express, Inc. are attached to this Complaint as Exhibit D.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.    An order awarding Plaintiff actual, statutory, treble, and all other damages available by law, along with pre- and post-judgment interest;

b.    An order awarding Plaintiff restitution for any amounts paid to Defendant because of Defendant's misconduct described herein;

c.    An order certifying the Issue Class, appointing Plaintiff as representative of the Issue Class, and appointing undersigned counsel as counsel for the Issue Class;

d.    An order certifying the Issue Class to decide whether Defendant's display of an artificially inflated "regular" price reference constitutes an unfair or deceptive act or practice in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law; and

e.    An order awarding attorneys' fees and costs.

Respectfully Submitted,

Dated: April 18, 2024

/s/ Kevin W. Tucker

Kevin W. Tucker (he/him) (PA 312144)
Kevin J. Abramowicz (PA 320659)
Chandler Steiger (she/her) (PA 328891)
Stephanie Moore (she/her) (PA 329447)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

Counsel for Plaintiff

## **VERIFICATION**

I, Timothy Fitchett, am fully familiar with the facts set forth in this Complaint. I verify that the averments contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Dated: April 16, 2024                    _/s/ Timothy Fitchett_____
                                          Timothy Fitchett (e-signed with permission)

# Heartgard Plus Green (6-pack) – Dog (26-50 lbs)

Heartgard Plus Green (6-pack) – Dog (26-50 lbs)

**Chewy.com**

As of February 16, 2023, Chewy.com identified the MSRP as $66.19. *See* https://web.archive.org/web/20230216000021/https://www.chewy.com/heartgard-plus-chew-dogs-26-50-lbs/dp/173232 (captured Apr. 4, 2024).



<u>Heartgard Plus Green (6-pack) – Dog (26-50 lbs)</u>

**1800PetMeds.com**

As of February 4, 2023, 1800PetMeds.com identified the "reg." price as $84.99. *See* https://web.archive.org/web/20230204145156/https://www.1800petmeds.com/Heartgard+Plus+Chewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 3. 2024).



# Nexgard (6-pack) – Dog (4-10 lbs)

### Nexgard (6-pack) – Dog (4-10 lbs)

#### Chewy.com

As of December 7, 2022, Chewy.com identified the MSRP as $144.99. *See* https://web.archive.org/web/20221207193455/https://www.chewy.com/nexgard-chew-dogs-4-10-lbs-orange-box/dp/173246 (captured Apr. 4. 2024).



## Nexgard (6-pack) – Dog (4-10 lbs)

### 1800PetMeds.com

As of February 3, 2023, 1800PetMeds.com identified the "reg." price as $190.56. *See* https://web.archive.org/web/20230203102105/https://www.1800petmeds.com/nexgard+chewable s-prod10356.html (captured Apr. 3. 2024).



# Nexgard Chewables (6-pack) – Dog (24-60 lbs)

Nexgard Chewables (6-pack) – Dog (24-60 lbs)

**Chewy.com**

As of January 23, 2023, Chewy.com identified the MSRP as $144.99. *See* https://web.archive.org/web/20230123153023/https://www.chewy.com/nexgard-chew-dogs-241-60-lbs-purple/dp/173252 (captured Apr. 4. 2024).



<u>Nexgard Chewables (6-pack) – Dog (24-60 lbs)</u>

### 1800PetMeds.com

As of February 3, 2023, 1800PetMeds.com identified the "reg." price as $208.56. *See* https://web.archive.org/web/20230203102105/https://www.1800petmeds.com/nexgard+chewables-prod10356.html (captured Apr. 3. 2024).



# Nexgard Chewables (3-pack) – Dog (04-10lbs)

### Nexgard Chewables (3-pack) – Dog (04-10lbs)

Webpage archived on February 15, 2016, see
https://web.archive.org/web/20160215005407/https://www.1800petmeds.com/nexgard%2Bchewables-prod10356.html (captured Aug. 1, 2023).



Nexgard Chewables (3-pack) – Dog (04-10lbs)

Webpage archived on February 5, 2017, see
https://web.archive.org/web/20170205082652/https://www.1800petmeds.com/nexgard%2Bchew
ables-prod10356.html (captured Aug. 1, 2023).



<u>Nexgard Chewables (3-pack) – Dog (04-10lbs)</u>

Webpage archived on September 19, 2018, see
https://web.archive.org/web/20180919165840/https://www.1800petmeds.com/nexgard%2Bchewables-prod10356.html (captured Aug. 1, 2023).



<u>Nexgard Chewables (3-pack) – Dog (04-10lbs)</u>

Webpage archived on May 2, 2019, see
https://web.archive.org/web/20190502104240/https://www.1800petmeds.com/NexGard+Chewab
les-prod10356.html (captured Aug. 1, 2023).



Nexgard Chewables (3-pack) – Dog (04-10lbs)

Webpage archived on January 11, 2020, see
https://web.archive.org/web/20200111225235/https://www.1800petmeds.com/nexgard%2Bchewables-prod10356.html (captured Aug. 1, 2023).



<u>Nexgard Chewables (3-pack) – Dog (04-10lbs)</u>

Webpage archived on January 17, 2021, see
https://web.archive.org/web/20210117034017/https://www.1800petmeds.com/nexgard%2Bchew
ables-prod10356.html (captured Aug. 1, 2023).



Nexgard Chewables (3-pack) – Dog (04-10lbs)

Webpage archived on January 21, 2022, see
https://web.archive.org/web/20220121044556/https://www.1800petmeds.com/nexgard%2Bchew
ables-prod10356.html (captured Aug. 1, 2023).



<u>Nexgard Chewables (3-pack) – Dog (04-10lbs)</u>

Webpage archived on February 3, 2023, see
https://web.archive.org/web/20230203102105/https://www.1800petmeds.com/nexgard%2Bchewables-prod10356.html (captured Aug. 1, 2023).



<u>Nexgard Chewables (3-pack) – Dog (04-10lbs)</u>

See https://www.1800petmeds.com/nexgard+chewables-prod10356.html (captured August 1, 2023).



# Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)

Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)

Webpage archived on April 30, 2020, see
https://web.archive.org/web/20200430024807/https://www.1800petmeds.com/Heartgard+Chewables+for+Cats-prod10004.html (captured Aug. 1, 2023).

<u>Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)</u>

Webpage archived on January 19, 2021, see
https://web.archive.org/web/20210119124624/https://www.1800petmeds.com/Heartgard+Chewa
bles+for+Cats-prod10004.html (captured Aug. 1, 2023).



## Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)

Webpage archived on January 24, 2022, see
https://web.archive.org/web/20220124175131/https://www.1800petmeds.com/Heartgard+Chewables+for+Cats-prod10004.html (captured Aug. 1, 2023).



<u>Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)</u>

Webpage archived on February 15, 2023, see
https://web.archive.org/web/20230215163529/https://www.1800petmeds.com/Heartgard+Chewables+for+Cats-prod10004.html (captured Aug. 1, 2023).



Heartgard Chewables for Cats (6-pack) – Cat (5-15lbs)

See https://www.1800petmeds.com/heartgard+chewables+for+cats-prod10004.html (captured Aug. 1, 2023).



# Apoquel (price per table)

Apoquel (price per table)

Webpage archived on January 30, 2016, see
https://web.archive.org/web/20160130231653/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on May 8, 2017, see
https://web.archive.org/web/20170508103719/https://www.1800petmeds.com/apoquel-
prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on September 19, 2018, see
https://web.archive.org/web/20180919212034/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).

Apoquel (price per table)

Webpage archived on May 2, 2019, see
https://web.archive.org/web/20190502050539/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on April 17, 2020, see
https://web.archive.org/web/20200417060959/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on January 17, 2021, see
https://web.archive.org/web/20210117160056/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on January 20, 2022, see
https://web.archive.org/web/20220120012915/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

Webpage archived on February 15, 2023, see
https://web.archive.org/web/20230215175836/https://www.1800petmeds.com/apoquel-prod11700.html (captured Aug. 1, 2023).



Apoquel (price per table)

See https://www.1800petmeds.com/apoquel-prod11700.html (captured August 1, 2023).



# Heartgard Plus Green (6-pack) – Dog (26-50 lbs)

### Heartgard Plus Green (6-pack) – Dog (26-50 lbs)

Webpage archived on September 27, 2020, see
https://web.archive.org/web/20200927181847/https://www.1800petmeds.com/Heartgard+Plus+Chewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 2, 2024).



<u>Heartgard Plus Green (6-pack) -- Dog (26-50 lbs)</u>

Webpage archived on October 20, 2021 , see
https://web.archive.org/web/20211020222620/https://www.1800petmeds.com/Heartgard+Plus+C
hewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 2, 2024).



<u>Heartgard Plus Green (6-pack) -- Dog (26-50 lbs)</u>

Webpage archived on May 22, 2022 , see
https://web.archive.org/web/20220522070621/https://www.1800petmeds.com/Heartgard+Plus+C
hewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 2, 2024).



<u>Heartgard Plus Green (6-pack) – Dog (26-50 lbs)</u>

Webpage archived on May 22, 2022 , see
<u>https://web.archive.org/web/20220522070621/https://www.1800petmeds.com/Heartgard+Plus+C hewables+6pk+Green+26-50+lbs-10001.html</u> (captured Apr. 2, 2024).



<u>Heartgard Plus Green (6-pack) – Dog (26-50 lbs)</u>

Webpage archived on June 8, 2023, see
https://web.archive.org/web/20230608083256/https://www.1800petmeds.com/Heartgard+Plus+C
hewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 2, 2024).



<u>Heartgard Plus Green (6-pack) – Dog (26-50 lbs)</u>

Webpage archived on December 1, 2023, see
https://web.archive.org/web/20231201130858/https://www.1800petmeds.com/Heartgard+Plus+C
hewables+6pk+Green+26-50+lbs-10001.html (captured Apr. 2, 2024).



# Nexgard Chewables (6-pack) – Dog (4-10 lbs)

## Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on February 15, 2016 , see
https://web.archive.org/web/20160215005407/http://www.1800petmeds.com/NexGard%2BChe
wables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on February 5, 2017, see
https://web.archive.org/web/20170205082652/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



## Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on July 20, 2018, see
https://web.archive.org/web/20180720205611/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



## Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on May 2, 2019, see
https://web.archive.org/web/20190502104240/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on January 11, 2020, see
https://web.archive.org/web/20200111225235/http://www.1800petmeds.com/NexGard%2BChew
ables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on January 17, 2021, see
https://web.archive.org/web/20210117034017/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on January 17, 2021, see
https://web.archive.org/web/20210117034017/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on January 21, 2022, see
https://web.archive.org/web/20220121044556/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (4-10 lbs)

Webpage archived on February 3, 2023, see
https://web.archive.org/web/20230203102105/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



# Nexgard Chewables (6-pack) – Dog (24-60 lbs)

### Nexgard Chewables (6-pack) – Dog (24-60 lbs)

Webpage archived on February 15, 2016, see
https://web.archive.org/web/20160215005407/http://www.1800petmeds.com/NexGard%2BChe
wables-prod10356.html (captured Apr. 3, 2024).



<u>Nexgard Chewables (6-pack) – Dog (24-60 lbs)</u>

Webpage archived on February 5, 2017, see
https://web.archive.org/web/20170205082652/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



## Nexgard Chewables (6-pack) – Dog (24-60 lbs)

Webpage archived on December 15, 2019, see
https://web.archive.org/web/20191215203700/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



### Nexgard Chewables (6-pack) – Dog (24-60 lbs)

Webpage archived on June 4, 2020, see
https://web.archive.org/web/20200604111919/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



Nexgard Chewables (6-pack) – Dog (24-60 lbs)

Webpage archived on January 17, 2021, see
https://web.archive.org/web/20210117034017/http://www.1800petmeds.com/NexGard%2BChewables-prod10356.html (captured Apr. 3, 2024).



<u>Nexgard Chewables (6-pack) – Dog (24-60 lbs)</u>

Webpage archived on January 21, 2022, see
https://web.archive.org/web/20220121044556/http://www.1800petmeds.com/NexGard%2BChe
wables-prod10356.html (captured Apr. 3, 2024).



<u>Nexgard Chewables (6-pack) – Dog (24-60 lbs)</u>

Webpage archived on February 3, 2023, see
<u>https://web.archive.org/web/20230203102105/http://www.1800petmeds.com/NexGard%2BChe</u>
<u>wables-prod10356.html</u> (captured Apr. 3, 2024).



East End Trial Group LLC Mail - Fw: Tim: Your Order Confirmation from PetMeds

 **EASTEND** TRIAL GROUP

Kevin Tucker <ktucker@eastendtrialgroup.com>

---

## Fw: Tim: Your Order Confirmation from PetMeds

**Tim Fitchett**
To: "ktucker@eastendtrialgroup.com" <ktucker@eastendtrialgroup.com>

---

**From:** PetMeds <customerservice@paws.petmeds.com>
**Sent:** Wednesday, February 8, 2023 8:32 AM
**To:** TIM FITCHETT
**Subject:** Tim: Your Order Confirmation from PetMeds

### 1800PetMeds is now PetMeds

During this time of transition we may send you email from customerservice@1800petmeds.com or customerservice@paws.petmeds.com. Please add both to your contacts or safe senders list.

Please review your order details. Your 100% Satisfaction is important to us! | View As Webpage

 **PetMeds** Your Trusted Pet Health Expert

**FAST & FREE SHIPPING** over $49
**100% Satisfaction Guaranteed**

 **PRICE MATCH** GUARANTEE

---

# Order Confirmed

Hi Tim,

Thank you for choosing PetMeds®. With our no hassle, 100% **Satisfaction Guarantee**, you and Vance are 100% satisfied or your money back.

**A summary of your order is listed below:**

| | |
|---|---|
| **Order #:** | O69241249 |
| **Customer #:** | 20839863 |
| **Shipping Method:** | US Mail First Class Trackable |
| **Shipping To:** | TIM FITCHETT |
| | PITTSBURGH, PA |

| Product | Qty | Price | Total |
|---|---|---|---|
| HEARTGARD PLUS 6PK GREEN 26-50 LBS For:Vance | 1 | $59.49 | $59.49 |
| NEXGARD 6PK 24.1-60 LBS CHEW For:Vance | 1 | $138.99 | $138.99 |
| NEXGARD 6PK 4-10 LBS CHEW For:Amber | 1 | $133.39 | $133.39 |

**For Medium Dogs Like Vance, we recommend:**



**Shop Steps And Ramps**



| SHIPPING & HANDLING | FREE |
|---|---|
| **Total** | **$331.87** |



**Shop Shedding**

**Questions? Contact Us**

You will receive an email confirmation with a tracking number when your order has shipped.

Thank you again for your order.

## Questions? Call us at 1-800-738-6337

**Shop Pet Food**

Get Connected:     

| **My Account »** | Pet Health Center » | + Add a Pet » |
|---|---|---|
| Email Preferences » | No Longer Have Pet » | Unsubscribe » |

©2022 PetMed Express, Inc. 420 S. Congress Ave Suite 100 Delray Beach, FL 33445 1.800.738.6337  All rights reserved.

**Email Preferences**: This e-mail was sent to you because you're a member of the PetMeds® family. To receive fewer emails or to unsubscribe, please **click here.** Free shipping e cludes refrigerated items  Cannot combine offers  Limited time only!

**EXHIBIT D**

**Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission directed to PetMed Express, Inc.**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY FITCHETT, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| *Plaintiff,* | No.: _____ |
| | CLASS ACTION |
| v. | |
| PETMED EXPRESS, INC., | |
| *Defendant.* | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION DIRECTED TO PETMED EXPRESS, INC.

Pursuant to Rules 4003.1, 4005, 4009.1, and 4014 of the Pennsylvania Rules of Civil Procedure, Plaintiff, by counsel, serves the following Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission directed to PetMed Express, Inc., and requests that PetMed Express, Inc. answer and respond to such discovery requests within the time required by the Pennsylvania Rules of Civil Procedure, and that PetMed Express, Inc. produce for inspection and copying the documents described herein by electronic mail to Plaintiff's counsel.

## RULES OF CONSTRUCTION

A.    The terms "and" and "or" are to be read interchangeably, *i.e.*, "and/or," so as to give the broadest possible meaning.

B.    The term "concerning" is to be given the broadest possible interpretation, such that it includes relating or related to, consisting of, referring to, describing, discussing, constituting, evidencing, containing, regarding, reflecting upon, mentioning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection with the matter discussed.

C.    The term "including" always means "including without limitation" or "including but not limited to," and should not be construed as a limitation.

D.    "Any" means "all" and *vice versa*.

E.    "Each" means "every" and *vice versa*.

F.    The use of the singular form of any word includes the plural and *vice versa*.

G.    The use of any tense of any verb shall also include within its meaning all other tenses of the verb.

## **INSTRUCTIONS**

A.      All Documents produced shall be separated and specifically identified by the Interrogatory, Request for Production of Documents, or Request for Admission to which they are primarily responsive.

B.      If any Document requested was, but is no longer, in existence, state whether it is: (a) missing or lost; (b) destroyed; (c) transferred to others, and if so, to whom; or (d) otherwise disposed of and, in each such instance, explain the circumstances surrounding authorization for the disposal and the approximate date thereof.

C.      If You seek to assert the attorney-client privilege, the attorney-work-product doctrine, or any other legally recognized privilege, provide a list showing each Document withheld and for each Document state the (a) type of Document; (b) name and title of the author; (c) name and title of the recipient, including any cc: and bcc: recipients; (d) date of the Document; (e) title or subject matter; (f) privilege or privileges claimed; and (g) the Request or Requests to which the Document relates

D.      Unless otherwise stated in a specific discovery request, these requests shall be deemed to cover the time period from six (6) years preceding the date that Plaintiff commenced this action to the present.

## DEFINITIONS

A.      "Action" means the above-captioned action.

B.      "Communication" means any transmittal or attempt at transmittal of information, including written communications, telephone communications, which include failed calls, unanswered calls, dropped calls, text messages, and voicemails, oral communications, electronic communications, which include electronic mail and communications sent or attempted to be sent over any internet, intranet, or any other information network, and any Documents or information transmitted between Persons or devices.

C.      "Complaint" means the operative Complaint in this Action.

D.      "Document" is used in the broad and literal sense, and includes without limitation any written, typed, printed, recorded, electronic, or graphic matter, however preserved, produced, maintained, or reproduced, of any type or description, regardless of origin or location, in Your actual or constructive possession, custody, or control, or the existence of which You have knowledge of, whether prepared, published, or released by You or by any other Person. If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which, by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), produce each non-identical copy as a separate document. Documents include Communications and Electronically Stored Information.

E.      "Electronically Stored Information" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any electronically created, electronically stored, or computer generated information, including, but not limited to, electronic mail, instant messaging, videoconferencing, and direct connections, or other electronic correspondence (whether active or deleted), word processing files, spreadsheets, databases, and sound recordings, whether stored on

cards, magnetic or electronic tapes, disks, computer files, computer or other drives, cell phones, Blackberry, PDA, print-outs, or other storage media, and such other codes, technical assistance, or instructions as will transform such Electronically Stored Information into an easily understandable and usable form.

F.      "MSRP" means manufacturer's suggested retail price.

G.      "Online Store" means all web pages, web applications, resources, and services within the https://1800petmeds.com/ domain and subdomains.

H.      "Person" or "Persons" mean any natural person or other legal entity, including without limitation any corporation, partnership, business, trust, agency, joint venture, or governmental organization, department, or entity.

I.      "Price Disparity" means the difference between the Regular Price and Strikethrough Price for the same Product in Your Online Store.

J.      "Product(s)" means goods purchased for personal, family, and/or household use. Products available for purchase in different quantities or that are intended for animals of different weights constitute separate Products.

K.      "Plaintiff" refers to Timothy Fitchett.

L.      "Regular Price" means the price not appearing in strikethrough font for a Product in Your Online Store.

M.      "Relevant Time Period" means the time period from six (6) years preceding the date that Plaintiff commenced this action to the present.

N.      "Strikethrough Price" means the price appearing in strikethrough font for a Product in Your Online Store.

O.      "Transaction" means a sale, exchange, or transfer of one or more Products by You, through Your Online Store, to another Person.

P.      "You" and "Your" refer to PetMed Express, Inc., and all other parties to whom the within First Discovery Requests are addressed, and their agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices, and employees, including persons or entities outside of the United States.

## INTERROGATORIES

1.      Identify by name, employer, and job title, any Person who provided any information You used to answer or respond to Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission.

**ANSWER:**

2.      Identify all Persons responsible for determining the Regular Price or Strikethrough Price of Products sold on the Online Store during the Relevant Time Period.

**ANSWER:**

3.      Identify all Persons tasked with modifying the Online Store during the Relevant Time Period to reflect changes to the Regular Price or Strikethrough Price of Products sold on the Online Store.

**ANSWER:**

4.      Identify all Products that You sold through the Online Store and delivered to a Pennsylvania shipping address during the Relevant Time Period.

**ANSWER:**

5.      For the Products identified in Your Answer to Interrogatory No. 4, identify by year how many Products You delivered to a Pennsylvania shipping address during the Relevant Time Period.

**ANSWER:**

6.      For the Products identified in Your Answer to Interrogatory No. 5, identify by year how many Products for which Your Online Store displayed a Price Disparity for the Product at the time of the Product's Transaction.

**ANSWER:**

7.     For the Products identified in Your Answer to Interrogatory No. 6, identify by year the number of Pennsylvania shipping addresses to which You delivered the Product.

**ANSWER:**

8.     For each Product identified in Your Answer To Interrogatory No. 4, identify every Regular Price for the Product during the Relevant Time Period, the dates or date ranges for every Regular Price, every Strikethrough Price for the Product during the Relevant Time Period, the dates or date ranges for every Strikethrough Price, every MSRP for the Product during the Relevant Time Period, and the dates or date range for every MSRP.

**ANSWER:**

9.     Identify and explain all steps You have taken—or policies and procedures You have implemented—during the Relevant Time Period to determine the Regular Price and Strikethrough Price for Products sold in your Online Store. If any of those steps, policies, or procedures have been introduced, amended, or curtailed during the Relevant Time Period, identify the date of such introduction, amendment, or curtailment.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All policies and procedures You have implemented during the Relevant Time Period to determine the Regular Price and Strikethrough Price for Products sold in your Online Store.

**RESPONSE:**

2.    All Documents relied on by You in forming Your responses to Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission.

**RESPONSE:**

3.    Any insurance policy or policies that may apply to this Action.

**RESPONSE:**

4.    If Your response to any Request for Admission was anything other than an unqualified admission, provide all Documents that support Your response.

**RESPONSE:**

5.    All surveys, studies, research, or reports, including any behavioral, psychological, or market research, user, customer, or product testing, A/B or multivariate testing, copy testing, surveys, focus groups, interviews, clickstream analyses, eye or mouse tracking studies, heat maps, or session replays or recordings that You relied on, reviewed, or created in determining the Regular Price, Strikethrough Price, or MSRP of any Products sold on the Online Store during the Relevant Time Period.

**RESPONSE:**

6.    All surveys, studies, research, or reports, including any behavioral, psychological, or market research, user, customer, or product testing, A/B or multivariate testing, copy testing, surveys, focus groups, interviews, clickstream analyses, eye or mouse tracking studies, heat maps,

or session replays or recordings that You relied on, reviewed, or created in deciding to display any Price Disparity on the Online Store during the Relevant Time Period.

**RESPONSE:**

7.    All presentations, reports, speeches, statements, research, or data, presented or intended to be presented to investors, including draft, finalized, and all other versions of such Documents, that concern the Regular Price, Strikethrough Price, MSRP, or Price Disparity of any Products sold on the Online Store during the Relevant Time Period.

**RESPONSE:**

8.    All complaints concerning the Regular Price, Strikethrough Price, MSRP, or Price Disparity of any Product sold on the Online Store during the Relevant Time Period.

**RESPONSE:**

9.    Any enforcement actions from any state or federal agency, or any other regulatory or governmental body concerning the Regular Price, Strikethrough Price, MSRP, or Price Disparity of any Product sold on the Online Store during the Relevant Time Period.

**RESPONSE:**

10.    Any lawsuits concerning the Regular Price, Strikethrough Price, MSRP, or Price Disparity of any Product sold on the Online Store during the Relevant Time Period.

**RESPONSE:**

11.    Documents on which You may rely to support any affirmative defense.

**RESPONSE:**

## REQUESTS FOR ADMISSION

1. Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store.

**RESPONSE:**

2. Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store during the Relevant Time Period.

**RESPONSE:**

3. Admit You displayed a Regular Price and a Strikethrough Price for the Products that Plaintiff purchased on Your Online Store at the time of his Transaction on February 8, 2023.

**RESPONSE:**

4. Admit You displayed a Regular Price and a Strikethrough Price for the 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds that Plaintiff purchased on Your Online Store at the time of his Transaction on February 8, 2023.

**RESPONSE:**

5. Admit You displayed a Regular Price and a Strikethrough Price for the 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds that Plaintiff purchased on Your Online Store at the time of his Transaction on February 8, 2023.

**RESPONSE:**

6. Admit You displayed a Regular Price and a Strikethrough Price for the 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds that Plaintiff purchased on Your Online Store at the time of his Transaction on February 8, 2023.

**RESPONSE:**

Exhibit D - 11 of 17

7.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2024.

**RESPONSE:**

8.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2023.

**RESPONSE:**

9.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2022.

**RESPONSE:**

10.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2021.

**RESPONSE:**

11.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2020.

**RESPONSE:**

12.    Admit You displayed a Regular Price and a Strikethrough Price for every Product You have sold on Your Online Store in 2019.

**RESPONSE:**

13.    Admit, at the time of a Transaction, You have never previously sold a Product for the Regular Price displayed for that Product on Your Online Store at the time of the Transaction.

**RESPONSE:**

14.     Admit at the time of Plaintiff's Transaction on February 8, 2023, You had never previously sold a 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds for more than the price Plaintiff paid on February 8, 2023.

**RESPONSE**:

15.     Admit at the time of Plaintiff's Transaction on February 8, 2023, You had never previously sold a 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds for more than the price Plaintiff paid on February 8, 2023.

**RESPONSE**:

16.     Admit at the time of Plaintiff's Transaction on February 8, 2023, You had never previously sold a 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds for more than the price Plaintiff paid on February 8, 2023.

**RESPONSE**:

17.     Admit the Regular Price displayed for a Product on Your Online Store does not represent the Product's MSRP.

**RESPONSE**:

18.     Admit the Regular Price displayed for a 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds on February 8, 2023 was not that Product's MSRP on February 8, 2023.

**RESPONSE**:

19.     Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds on February 8, 2023 was not that Product's MSRP on February 8, 2023.

**RESPONSE**:

20.     Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds on February 8, 2023 was not that Product's MSRP on February 8, 2023.

**RESPONSE:**

21.     Admit the Regular Price displayed for a Product on Your Online Store does not represent a former price for which You previously sold the Product at Your Online Store.

**RESPONSE:**

22.     Admit the Regular Price displayed for a 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds on February 8, 2023 was not a former price for which You previously sold that Product at Your Online Store.

**RESPONSE:**

23.     Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds on February 8, 2023 was not a former price for which You previously sold that Product at Your Online Store.

**RESPONSE:**

24.     Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds on February 8, 2023 was not a former price for which You previously sold that Product at Your Online Store.

**RESPONSE:**

25.     Admit the Regular Price displayed for a Product on Your Online Store does not represent the price for which the Product is being sold elsewhere in the market.

**RESPONSE:**

26.    Admit the Regular Price displayed for a 6-pack of Heartgard Plus Green for dogs that weigh between 26 and 50 pounds on February 8, 2023 was not the price for which that Product is being sold elsewhere in the market on February 8, 2023.

**RESPONSE**:

27.    Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 24 and 60 pounds on February 8, 2023 was not the price for which that Product is being sold elsewhere in the market on February 8, 2023.

**RESPONSE**:

28.    Admit the Regular Price displayed for a 6-pack of Nexgard for dogs that weigh between 4 and 10 pounds on February 8, 2023 was not the price for which that Product was being sold elsewhere in the market on February 8, 2023.

**RESPONSE**:

Respectfully submitted,

Dated: April 18, 2024

_/s/ Kevin W. Tucker_

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on April 18, 2024, I caused a true and correct copy of the foregoing

Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for

Admission directed to PetMeds Express, Inc. to be delivered to a process server with instructions

to serve Defendant's registered agent contemporaneous with service of Plaintiff's Class Action

Complaint. Defendant's registered agent is located at:

URS AGENTS, LLC
3458 LAKESHORE DR.
TALLAHASSEE, FL 32312

Dated: April 18, 2024                    */s/ Kevin W. Tucker*
                                         Kevin W. Tucker (He/Him)

# Allegheny County Department Of Court Records

### Civil/Family Division Docket Report

Run Date and Time: 4/18/2024 - 16:49:4

| GD-24-004439 | |
|---|---|
| | Fitchett vs Petmed Express Inc. |

| | |
|---|---|
| **Filing Date:** | **Case Type:** |
| 4/18/2024 | Other Tort |
| **Related Cases:** | **Court Type:** |
| | General Docket |
| **Consolidated Cases:** | |
| | **Current Status:** |
| **Judge:** | Complaint |
| No Judge | |
| | **Jury Requested:** |
| **Amount In Dispute:** | Y |
| $ 0 | |

**--Parties--**

| LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|---|---|---|---|---|---|---|
| Fitchett | Timothy | | Plaintiff | | -- | Kevin W. Tucker |
| Petmed Express Inc. | | | Defendant | | -- | -- |

**--Attorney--**

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| Tucker | Kevin | W. | Plaintiff's Attorney | 6901 Lynn Way Suite 215 Pittsburgh PA 15208 | 4128775220 |
| Steiger | Chandler | | Plaintiff's Attorney | 6901 Lynn Way Pittsburgh PA 15208 | 4128775220 |
| Moore | Stephanie | | Plaintiff's Attorney | 6901 Lynn Way Suite 215 Pittsburgh PA 15208 | 4128775220 |
| Abramowicz | Kevin | J. | Plaintiff's Attorney | 6901 Lynn Way Suite 215 EAST END TRIAL GROUP LLC Pittsburgh PA 15208 | 4128775220 |

**--Non Litigants--**

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| | | | No Litigants Found | | |

**--Docket Entries--**

| Filing Date | Docket Type | Docket Text | Filing Party |
|---|---|---|---|
| 4/18/2024 | Complaint | | Timothy Fitchett |

**--Judgments Against--**

| Name | Amount | Satisfied(Y,N) |
|---|---|---|
| | No Judgments Found | |

**--Events Schedule--**

| Event Scheduled | Event Date & Time | Room Number | Judge/Hearing Officer |
|---|---|---|---|
| | No Information Found | | |