## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY FITCHETT**, individually and on behalf of all others similarly situated, | ) ) | No. 2:24-cv-710 |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Judge Robert J. Colville |
| v. | ) | |
| | ) | |
| **PETMED EXPRESS, INC.**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

Before the Court is the Motion to Remand (ECF No. 9) filed by Plaintiff Timothy Fitchett ("Mr. Fitchett") in the above-captioned matter.  Mr. Fitchett asserts that this matter should be remanded to the Court of Common Pleas of Allegheny County pursuant to 28 U.S.C. § 1447.  Defendant PetMed Express, Inc. ("PetMed") has filed a Response (ECF No. 16) to the Motion to Remand, and Mr. Fitchett has filed a Reply (ECF No. 18).  Accordingly, Mr. Fitchett's Motion to Remand has been fully briefed and is ripe for disposition.

### I.    Factual Background & Procedural History

The present action was originally filed in the Court of Common Pleas of Allegheny County on April 18, 2024, at Civil Division GD 24-004439.  This case was timely removed to this Court on May 13, 2024, pursuant to the Class Action Fairness Act of 2005.  Pub L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA").  ECF No. 1.  On June 11, 2024, Mr. Fitchett filed the now-pending Motion to Remand and Brief in Support (ECF No. 10).

1

The allegations in the Complaint are as follows.  Mr. Fitchett visited PetMed's online store to purchase dog heartworm, flea, and tick prevention products.  ECF No. 1-1 ¶ 38.  PetMed advertised the products Mr. Fitchett sought to purchase as though they were on sale, indicating that a "sale price," as opposed to the "regular price," i.e., the price that the products would purportedly otherwise cost consumers, applied.  *Id.* ¶ 40.  PetMed has never offered the products at issue for the "regular price" and has only offered the products at a "sale price."  *Id.* ¶ 35.  The regular prices advertised are "false reference prices," utilized as part of PetMed's "false discount scheme."  *Id.* ¶ 53.

Mr. Fitchett seeks redress for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  73 P.S. § 201-1, *et seq*.  Mr. Fitchett's allegations arise from PetMed's use of an artificially inflated regular price, also called a False Reference Price, on PetMed's website.  *Id.*  ¶ 55.  Mr. Fitchett asserts one claim on behalf of a class comprised of "all Pennsylvania citizens who are domiciled in Pennsylvania and who purchased products from Defendant's Online Store."  *Id.*  ¶ 58.  In his prayer for relief, Mr. Fitchett seeks, inter alia, an order certifying an issue class to decide the limited issue of whether PetMed's display of a false reference price constitutes an unfair or deceptive act or practice in violation of the UTPCPL.  *Id.*  ¶¶ 73, 76.  Mr. Fitchett also alleges that he suffered losses equal to the discounts that PetMed offered but that Mr. Fitchett never received.  *Id.* ¶ 57.  Accordingly, Mr. Fitchett seeks $426.69 on his own behalf, and purports not to seek damages on behalf of the putative class.[1]  *Id.*  ¶ 73.

By way of his Motion to Remand, Mr. Fitchett argues that CAFA's jurisdictional requirements were not met; specifically arguing that the amount in controversy in this matter

---

[1] Under the UTPCPL, damages awarded may, at the court's discretion, be trebled. 73 P.S. § 201-9.2.  In this case, Mr. Fitchett is seeking $142.23 in allegedly falsely advertised discounts.  If successful on his UTPCPL claim, Mr. Fitchett could potentially recover the trebled amount of $426.69, i.e., triple the amount of the advertised discounts.

should be limited to only the monetary relief requested by Mr. Fitchett, i.e., without regard to any of the putative class members.  ECF No. 10.  PetMed argues that the value of this litigation far exceeds the damages requested by Mr. Fitchett as an individual.  PetMed further argues that the relief requested by Mr. Fitchett as to the issue class amounts to what is, in essence, a declaratory judgment.  In support, PetMed asserts that resolution of the issue of whether PetMed engaged in UTPCPL violations on a class-wide basis would result in a preclusive effect on the parties, including putative class members, and would constitute a "significant step" for putative class members to recover under the UTPCPL.  *Id.*

## II.    Legal Standard

"The propriety of removal . . . depends on whether the case originally could have been filed in federal court."  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  Generally speaking, removal statutes are to be construed against removal, and any doubt regarding whether jurisdiction exists favors remand.  *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004).  The Court's inquiry "must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must accept as true all factual allegations in the complaint."  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).  If, at any time before final judgment, it appears that a district court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c).

"Federal courts are courts of limited jurisdiction."  *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  Generally, there is no presumption that a federal court has jurisdiction to adjudicate a particular case.  *Allison v. Chesapeake Energy Corp.*, No. 2:12-cv-900, 2013 WL 787257, at *6 (W.D. Pa. Jan. 29, 2013).  However, no antiremoval presumption attends cases involving CAFA.  *Dart Cherokee Basin Operating Co., LLC v. Owens*,

574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).
Under CAFA, a federal court has original jurisdiction over actions that satisfy the statute's special
diversity and procedural requirements.   Specifically, federal district courts have original
jurisdiction over class action cases arising under state law when: (1) there are at least 100 members
of the class; (2) there is minimal diversity; and (3) the amount in controversy, as aggregated across
all individual claims, exceeds the sum or value of $5,000,000 (exclusive of interests and costs).
28 U.S.C. § 1332(d)(2).

   A defendant may assert the purported amount in controversy in its Notice of Removal if
the Pennsylvania state court complaint does not provide a demand for a specific sum.  28 U.S.C.
§1446(c)(2)(B); *see also* Pa.R.C.P. 1021(b) ("Any pleading demanding relief for unliquidated
damages shall not claim a specific sum."); *Scaife v. CSX Transp. Inc.*, No. 3:19-cv-60, 2019 WL
3353727, at *12 (W.D. Pa. July 25, 2019).  As evidence "of the jurisdictional amount, the Court
may consider the complaint, the notice of removal, and subsequent submissions related to the
motion to remand."  *Klaphake v. Columbia Gas Transmission, LLC*, No. 17-cv-1359, 2018 WL
1736791, at *1 (W.D. Pa. Apr. 11, 2018).

   For removal actions under 28 U.S.C. §1446, courts within the Third Circuit have applied
several tests to determine whether the amount in controversy surpasses the jurisdictional threshold.
*See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014).  These three tests
include (1) the *McNutt/Samuel-Bassett* preponderance test; (2) the *Red Cab/Samuel-Bassett* legal
certainty test; and (3) the *Morgan* legal certainty test.  *Id.*

   The *McNutt/Samuel-Bassett* test applies where a defendant raises factual arguments in their
notice of removal against the plaintiff's purported amount in controversy.  *Id.* at 504 (quoting
*Samuel-Bassett*, 357 F.3d at 398 and *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S.

178, 179-80 (1936)).  Under this test, the party asserting jurisdiction must justify their position by a preponderance of the evidence standard.  *See McNutt*, 298 U.S. at 189 (U.S. 1936).  Satisfying the preponderance of the evidence standard has been defined as "proof to a reasonable probability that jurisdiction exists."  *Frederico v. Home Depot*, 507 F.3d 188, 196, n.6 (3d Cir. 2007).

The *Red Cab/Samuel-Bassett* test applies where the alleged facts are uncontested for purposes of calculating the amount in controversy, or where the Court has already made a factual determination under the *McNutt* standard.  *Judon*, 773 F.3d at 501.  The calculation is, therefore, determined "in whole or in part" by applicable law.  *Id.* at 505.  The *Red Cab* challenger to jurisdiction has the burden of proving to a legal certainty that the amount in controversy could not exceed the threshold.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Frederico*, 507 F.3d at 195.

The *Morgan* test applies where a plaintiff's complaint expressly limits the amount in controversy below the threshold to avoid federal jurisdiction.  *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006).  In *Morgan*, the plaintiff stated, in his complaint, that any relief sought was not to exceed the $5 million threshold.  *Morgan v. Gay*, Civ. No. 3:06-cv-1371, 2006 WL 2265302, at *1 (D.N.J. Aug. 7, 2006) ("however, the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value.").  Under those circumstances, the Third Circuit held that the removing defendant bears the burden to prove to a legal certainty that the complaint exceeds the amount in controversy.  *Morgan*, 471 F.3d at 475.

### III.   Discussion

Mr. Fitchett's Motion to Remand turns on the issue of whether a representative plaintiff in a class action can limit the amount in controversy by listing a monetary demand only for himself while bringing the rest of his claim as an issue class.

5

A.  **Issue Class**

"When appropriate, an action may be brought or maintained as a class action on particular issues."  Fed. R. Civ. P. 23(c)(4).  District courts may certify particular issues for class treatment even if those issues, once resolved, do not resolve a defendant's liability.  *Russell v. Educ. Comm'n for Foreign Med. Graduates, 15 F.4th 259, 265 (3d Cir. 2021)* (holding certification may be considered for individual issues such as duty and breach); *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (recognizing the use of non-liability issue classes to determine issues other than defendant's liability to any claimant).  An order on a certified issue class "can be thought of as a type of declaratory judgment," *Russell*, 15 F.4th at 275, because a ruling as to a particular issue has a preclusive effect on fellow class members in subsequent litigation, *Bayshore Ford Truck Sales Inc. v. Ford Motor Co.*, 607 F. App'x 203, 206 (3d Cir. 2015); *see also Cooper v. Ged. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("there is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation").  It bears noting that, for plaintiffs seeking non-monetary relief, such as in cases involving requests for declaratory judgment, the amount in controversy is calculated based on "the value of the object of the litigation."  *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995).

Here, Mr. Fitchett requests the certification of an issue class under Pa.R.C.P. 1710(c)(1) to decide whether PetMed engaged in behavior constituting a harmful or deceptive practice in violation of the UTPCPL.  The issue class mechanism has been recognized as a proper litigation tool, and the Court acknowledges the use and benefits of issue classes.  Its use, however, cannot be adopted in a way that contradicts the statutory and jurisdictional authority afforded to federal

courts under CAFA.  Despite Mr. Fitchett's arguments to the contrary, the value of the litigation in this matter is impacted by the issue class claim brought by Plaintiff because the relief sought in certifying an issue class to determine even a single element, a UTPCPL violation, necessarily encompasses the rights of both parties.  Both putative class members and PetMed will either benefit from or be hindered by a finding of a UTPCPL violation, or lack thereof, on PetMed's part because a judgment in the instant case will have a direct effect on the rights of putative class members to assert a UTPCPL claim against PetMed in future litigation, as well as a preclusive effect on PetMed to defend against potential future claims.   Thus, the Court's calculation of the amount in controversy in this case will involve consideration of the implications should Plaintiff prove successful on his issue class claim.

### B.  Amount in Controversy Tests

#### 1.  *McNutt/Samuel-Bassett* **Preponderance of the Evidence Test**

A simple allegation or assertion that the jurisdictional threshold has been met is sufficient to initially support removal under CAFA.  *Dart*, 574 U.S. at 89.  If a defendant's assertion respecting the amount in controversy is disputed by the plaintiff or questioned by the court, courts employ a preponderance of the evidence standard in making findings of jurisdictional fact.  *See Dart, 574 U.S. at  88; see also Winkworth v. Spectrum Brands, Inc.*, No. 2:19-cv-1011, 2019 WL 5310121 (W.D. Pa. Oct. 21, 2019); *Bailey v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:21-cv-503, 2021 WL 1864031 (W.D. Pa. May 10, 2021); 28 U.S.C. § 1446(c)(2)(B) ("removal of the action is proper on the basis of an amount in controversy asserted [ . . . ] if the court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)").

Here, Mr. Fitchett has not contested the factual assertions advanced by PetMed in support of removal, a prerequisite to the use of the *McNutt* preponderance of the evidence test. PetMed also relies on the facts alleged in the plaintiff's complaint to establish the amount in controversy. In seeking remand, Mr. Fitchett advances argument as to the legal requirements for assessing the amount in controversy, not the factual circumstances that give rise to Mr. Fitchett's claims. Accordingly, the *McNutt* preponderance of the evidence test is not applicable in this matter.

### 2. *Morgan* Legal Certainty Test

Another district court has noted that, while *Judon* and *Dart* did not explicitly overturn the Third Circuit's long-running amount in controversy tests, there remains some confusion as to the continued viability of *Morgan*'s legal certainty standard post-*Judon* and *Dart*. *See Sciarrino v. State Farm Fire and Casualty Company*, No. 2:20-cv-2930, 476 F. Supp. 91, 97 (E.D. Pa. Aug. 4, 2020). This Court will not, however, determine *Morgan*'s continued viability in this Circuit because the circumstances of the instant case do not give rise to the application of the *Morgan* test.

Mr. Fitchett incorrectly asserts that *Morgan*'s legal certainty test applies in this case and that the burden lies with PetMed to prove to a legal certainty that the amount in controversy exceeds the jurisdictional threshold. ECF No. 10. For the burden to be placed on PetMed to prove to a legal certainty that the amount in controversy exceeds the jurisdictional threshold, Mr. Fitchett would have had to explicitly limit his requested relief in an attempt to avoid federal subject matter jurisdiction. While Mr. Fitchett's Complaint does indeed specify his requested monetary relief as to his individual damages, that relief is not stated in the same manner as the patently explicit limit set forth in the *Morgan* complaint. *Compare Morgan v. Gay*, No. 2:06-1371, 2006 WL 2265302 at *1 (D.N.J. Aug. 7, 2006) ("the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value.") *and* ECF 1-1 (requesting "an order awarding Plaintiff

actual, statutory, treble, and all other damages," with no explicit limit set as to the potential award for the putative class).

PetMed argues that Mr. Fitchett attempts to avoid federal jurisdiction by limiting the monetary relief he requested to himself as the representative plaintiff. However, Mr. Fitchett has not attempted to explicitly bind himself below the jurisdictional threshold for CAFA actions. The decision to limit requested monetary relief to Mr. Fitchett alone does not necessarily indicate an intent by Mr. Fitchett to avoid this Court's jurisdiction. However, it does implicate a debate over the actual value of litigation. The Court thus must determine the amount in controversy using another standard, as the *Morgan* legal certainty test does not apply.

### 3. *Red Cab/Samuel-Bassett* Legal Certainty Test

The Court will utilize the *Red Cab/Samuel-Bassett* legal certainty test in this case because the calculation of the amount in controversy turns on legal arguments. *Judon*, 773 F.3d at 503; *see also Frederico*, 507 F.3d at 194. Mr. Fitchett argues that the Court should not, in determining the amount in controversy, consider the potential claims that may be brought by putative class members in the future as a result of an issue class ruling in this case. PetMed contends that the law requires the Court's assessment to include the value of the potential claims made by class members in future litigation. Even though calculating the amount in controversy is a factual inquiry, determining whether to include claims made by putative class members in future litigation is squarely within the purview of applicable law and interpretation. Thus, Mr. Fitchett, as the challenger to this Court's jurisdiction, must prove to a legal certainty that the amount in controversy of the instant case could not exceed $5 million.

### C. CAFA Jurisdiction Analysis

### 1. Numerosity and Minimal Diversity

Mr. Fitchett's Complaint alleges that the class consists of more than forty class members. ECF No. 1-1.  PetMed, in response, notes that Mr. Fitchett does not dispute that PetMed made sales to over 100 individuals with Pennsylvania addresses.  ECF No. 16.  Mr. Fitchett has not contested the numerosity component in subsequent pleadings, and, accordingly, the Court views this requirement as established.  Additionally, Mr. Fitchett's Complaint alleges that Mr. Fitchett is a resident of Pennsylvania, and that PetMed is a Florida corporation headquartered in Florida.  ECF No. 1-1.  The issue of minimal diversity is uncontested, has been reviewed by the Court, and the requirement has been met.  As a result, the only determination that remains for this Court is the amount in controversy, and whether the value of the instant case surpasses the special jurisdictional threshold of $5 million.

### 2.   Amount in Controversy

Upon removal, the defendant may present an estimated amount in controversy based on a "reasonable reading of the value of the rights being litigated," *Judon*, 773 F.3d at 407, and not the "low end of an open-ended claim," *Werwinski v. Ford Motor Co*., 286 F.3d 661, 666 (3d Cir. 2002).   As noted, where a plaintiff seeks non-monetary relief, the amount in controversy is calculated based on "the value of the object of the litigation."  *Columbia Gas*, 62 F.3d at 541; *see also id.* at 539 ("[W]e measure the amount in controversy by the value of the rights which the plaintiff seeks to protect.").

The issue currently before the Court is the probable calculation of the amount in controversy, given the nature of the case and the relief requested in the Complaint.  Here, there are several reasons why this Court should consider potential relief that may be afforded to the putative class in subsequent litigation, in addition to Mr. Fitchett's requested relief, in determining the amount in controversy.  Because an issue class finding as to whether PetMed violated the UTPCPL

is tantamount to a declaratory judgment, *see Russell*, 15 F.4th at 275, a proper assessment of the amount in controversy requires this Court to consider the value of the rights which the class seeks to protect in seeking an issue class ruling. Here, the binding and preclusive effect of the issue class ruling underscores what Mr. Fitchett, the putative class, and PetMed stand to gain and lose.

In its Brief, PetMed analyzes the value of this litigation from both the putative class's and PetMed's perspective. ECF No. 16. The Court will take a similar approach in contemplating the value of the object of the litigation to each party.

In assessing the value of this litigation to Mr. Fitchett and the putative class, the Court need look no further than Mr. Fitchett's own words. Mr. Fitchett suggests that the issue class ruling he seeks would bring all putative class members to the "five-yard line" on potential UTPCPL claims, indicating a belief that only 5% of each individual claim would remain to be litigated following a favorable issue class ruling. ECF No. 10. Mr. Fitchett's assertion that the Court should ignore the putative class members in assessing the amount in controversy would permit issue classes to be used to determine the most significant elements of a particular claim while moving putative class members drastically closer to remedy, all while a district court is prevented from considering the value of a ruling on those issues in determining whether it has jurisdiction. Mr. Fitchett's stance would mean that all class members would complete 95% of their case in this Court, while this Court is limited to assessing the value of litigation as to the relief requested by only the first class member. That interpretation, in this Court's estimation, is not a supportable one.

Should an issue class ruling be made in Mr. Fitchett's favor in this case, the potential benefits for the putative class members are clear: class members would be able to utilize the ruling to satisfy a key element of their future claim, with the remaining work for the individual plaintiffs becoming, according to Mr. Fitchett himself, minimal. Further, Mr. Fitchett and the putative class

stand to lose the viability of their claims against PetMed should they prove unsuccessful in this litigation. Mr. Fitchett himself acknowledges that "an adverse determination would . . . mean the class members' claims are valueless." ECF No. 18 at 5. All class members would face the preclusive effect of an adverse ruling in this case and would be unable to successfully allege a claim for the conduct described. The value of the rights the putative class seeks to protect is the viability of thousands of UTPCPL claims totaling millions of dollars.

The Court also notes that PetMed stands to lose a significant amount in monetary penalties should the issue class determination be made against it. According to PetMed, a declaration that it violated the UTPCPL would open the door to hundreds of thousands of claims that, according to Mr. Fitchett, would be near completion and ready to be filed as individual lawsuits. As discussed below, damages available for the putative class, as aggregated across all potential claims, would result in several millions of dollars in judgments against PetMed.

Mr. Fitchett cites *Phelps Oil & Gas v. Noble Energy Inc.* in arguing that subsequent claims that could be brought following a court's judgment cannot be counted toward the amount in controversy. 5 F.4th 1122, 1127 (10th Cir. 2021). In *Phelps,* a defendant, DCP, argued that a co-defendant, Noble, would use a judgment in their present action to hold DCP liable for all payments owed to the plaintiff in future litigation. As a result, DCP argued that the amount in controversy calculation should include the potential losses that it could suffer in future litigation between the co-defendants. *Id.* Like in *Phelps*, Mr. Fitchett argues that assessing the claims of putative class members in subsequent litigation is too speculative or collateral to warrant inclusion in the amount in controversy calculation. *See also Cnty. of Washington, Pa. v. U.S. Bank Nat. Ass'n*, No. CIV.A. 11-1405, 2012 WL 3860474, at \*20 (W.D. Pa. Aug. 17, 2012), *report and recommendation adopted*, No. CIV.A. 11-1405, 2012 WL 3860438 (W.D. Pa. Sept. 5, 2012) ("Where the value of

the requested injunction or declaratory relief is too uncertain or speculative, the court may decline

to ascribe a value to the equitable relief and may decline to consider such relief in calculating the

amount in controversy.").  While the Court understands the *Phelps* analysis, it notes that *Phelps* is

an out-of-circuit, non-binding decision that is readily distinguishable from the present matter.  In

*Phelps*, which was not a class action, DCP suggested that Noble could, possibly, use a judgment

against DCP in the future.  In ruling against DCP, the 10th Circuit explained:

> *Noble has made no cross-claim, nor has it shown any interest in bringing a separate*
> *lawsuit against DCP. This is fatal.* Our precedents explain that the amount in
> controversy cannot be based on contingent, speculative, or collateral claims that
> could possibly occur as a result of the judgment

*Id.* at 1127 (emphasis added).

Unlike the co-defendant in *Phelps*, Mr. Fitchett has *already* asserted a claim on behalf of

the putative class members against PetMed.  Further, a finding as to PetMed's conduct and alleged

violation of the UTPCPL is a necessary and essential element of the future claims that class

members must make.  Even Mr. Fitchett recognizes that the central purpose of the issue class is to

provide those class members with a preclusive ruling that they could utilize in future litigation.  It

is illogical for Mr. Fitchett to suggest that the purpose of this issue class is to lead to 95%

completion of future claims made by class members while also arguing that those claims are too

speculative to assess the value of this case.  Put more explicitly, damages that may be owed to

putative class members in future litigation are not so collateral or speculative such that they cannot

be considered in determining the value of the object of the litigation.

PetMed cites *Winkworth v. Spectrum Brands, Inc.* in arguing that this Court should

consider the potential effect of an issue class ruling in its amount in controversy calculation.  ECF

No. 16.  In *Winkworth*, the plaintiffs asserted claims relating to merchantability, breach of express

warranty, and negligence resulting from Spectrum's Hot Rollers products.  2019 WL 5310121, at

*1.  The plaintiffs clarified that they were "not seeking a nationwide refund to each purchaser of Hot Rollers," but, rather, that they were seeking "injunctive and/or declaratory relief . . . on behalf of the Nationwide Class" and a declaration of "coverage under the available express and implied warranties."  *Id.*  The Court believes that *Winkworth* is more analogous to the instant case because it involved CAFA jurisdiction and, more importantly, an amount in controversy analysis involving an injunctive/declaratory relief class.  *Id.* at *3.  Mr. Fitchett argues that, because *Winkworth* involved a warranty, a finding in the class's favor would automatically entitle class members to recovery, and that no such automatic award is available under the UTPCPL unless and until the plaintiffs establish justifiable reliance and damages.  Even if there are further steps putative class members must take to prove they are entitled to damages, such as proving justifiable reliance, that does not mean that the Court should simply ignore the potential benefits and risks an issue class ruling would present to all parties.  Further, it is the Court's view that bringing class members to the "five-yard line" in any action is enough to consider the totality of potential relief that may be afforded to putative class members in future litigation where those future claims are a direct result of the present case.

Because the potential future claims of putative class members are not so collateral or speculative such that the Court could not consider them for purposes of assessing the amount in controversy, the Court must include the potential recovery of damages that may be owed to putative class members based on *all* individual claims as aggregated.  As previously determined, the *Red Cab/Samuel-Bassett* legal certainty test applies.  Therefore, Mr. Fitchett must prove to a legal certainty that the amount in controversy cannot exceed $5 million where individual claims of putative class members are aggregated.

Mr. Fitchett offers no factual indication that an aggregation of all individual claims cannot exceed $5 million.  Mr. Fitchett focuses on the fact that he only requests monetary relief for himself.  Therefore, Mr. Fitchett's allegations "[threw] no light upon [the] subject" of the total amount in controversy.  *See McNutt*, 298 U.S. at 181.  Thus, the Court is free to look at the record and assertions made by PetMed as to what the amount in controversy may be.  *Dart*, 74 U.S. at 84. Further evidence of a potential recovery that the putative class could recover is found in PetMed's Notice of Removal (ECF No. 1) and its Declaration filed at ECF No. 17.

For a violation of the UTPCPL, the court may, at its discretion, award up to three times the actual damages sustained.  In a class action, the class representative's claims must be typical of the claims of the class. Pa.R.C.P. 1702(3); Fed. R. Civ. P. 23(a)(3).  It is, therefore, not unreasonable to assume that Mr. Fitchett has damages typical of the class, and it would be proper to multiply the number of plaintiffs by the damages sought by Mr. Fitchett.  *Judon*, 773 F.3d at 507; *see also Frederico*, 507 F.3d at 197.  The information provided by PetMed, however, is the number of orders made on the website by those in Pennsylvania, not the number of customers. Rather than assuming what every class member may be owed in damages, and because the Court does not have a specific number for the potential class size, the Court will use the low end of a successful award to calculate damages per violation.  At the very least, a successful UTPCPL claimant would be due $100.00 in statutory damages per violation.  73 P.S. § 201-9.2(a).

If we take Mr. Fitchett's factual averments as true, that PetMed "offers discounts on *all* of its products, *all* of the time," ECF No. 1-1 ¶ 22, every order placed by Pennsylvania residents using PetMed's website would include at least one UTPCPL violation.  Therefore, taking Plaintiff's allegations as true, the Court finds that each and every order that falls within the class definition would include at least one violation of the UTPCPL.  As a result, the $5 million amount in

controversy threshold may be reached where there are 50,000 orders with a statutory $100.00 award per violation.

As purported by PetMed, "hundreds of thousands" of orders were placed by those with Pennsylvania addresses.  The Court considers "hundreds of thousands" to indicate that, at the very least, 100,000 orders fall under Mr. Fitchett's class definition.  Because PetMed alleges that more than 100,000 orders were placed by those with Pennsylvania addresses, and Mr. Fitchett provides no argument to the contrary, simple multiplication of the most conservative estimates involved results in a $10 million amount in controversy.  Mr. Fitchett does not meet his burden to prove to a legal certainty that the amount in controversy cannot exceed $5 million and provides no evidence that it could not be reached after aggregating the potential statutory awards of the putative class in future litigation.[2]  Thus, the required amount in controversy has been satisfied, and this case was correctly removed to federal court under CAFA's grant of original jurisdiction.

## IV.    Conclusion

For the reasons discussed above, the Court will deny Mr. Fitchett's Motion to Remand.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 26, 2024

cc: All counsel of record

---

[2] Given this Court's holdings herein respecting consideration of the value of the litigation to putative class members, the Court notes that it believes that Mr. Fitchett would have proven unsuccessful in his attempt to remand this case even if the *Morgan* test applied.